**STATE**

v.

**Tyrone R. POWELL.**

**No. 2008–336–M.P.**

Supreme Court of Rhode Island.

Oct. 29, 2010.

Virginia M. McGinn, Department of Attorney General, for State.

Paula Rosin, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

Community complaints about street-level prostitution and narcotics activities resulted in three members of the Providence Police Department working undercover in plainclothes. At approximately 10:15 P.M. on April 8, 2008, the undercover police pulled into the parking lot of a gas station. A man standing next to a black SUV made eye contact with one of the undercover officers and motioned with a nod. After the officer nodded back, the man approached, engaged in some small talk and then asked whether the men were looking to buy any "rock" (crack cocaine). One of the officers replied affirmatively. The man then asked whether he could get in the car and said that he could get them what they needed. Once in the car, the man and the three undercover officers went for a drive around the block. After some haggling over price, the man removed from his waistline a clear plastic bag containing the drug. The undercover police paid for the contraband with a pre-marked $20 bill. With the drug transaction complete, the car came to a stop; but before leaving the vehicle the man inquired whether the occupants wanted more. The officers agreed and bought a second bag for $18. After completing the second exchange, the man exited the vehicle. The undercover police immediately followed the man on foot and, with badges shown, revealed themselves as police officers.

The man, Tyrone R. Powell, was handcuffed and brought to the police station. Field tests confirmed that the "rocks" purchased by the officers for $38 were, in fact, cocaine. Because he was serving a probationary period, Powell was presented to the Superior Court as a probation violator, and after a hearing, a justice of that court so adjudicated him. The hearing justice vacated the remaining five years, six months of a previously imposed suspended sentence and ordered that defendant be incarcerated. Defendant seeks review from that adjudication from this Court.[1]

---

1. This case came before us after we granted a common law writ of certiorari. It appears that Mr. Powell filed a timely *pro se* notice of appeal, and indeed the Superior Court docket sheets contain an entry that such a notice was filed. The Superior Court file, however, does not contain the notice of appeal itself. Because the actual notice could not be located, the Superior Court declined to transmit its file to the Supreme Court. Consequently, the

Before us, defendant argues that the hearing justice erred in (1) denying defendant's request for a continuance to secure new counsel, and (2) in refusing defendant's request for the appointment of alternative counsel. On October 5, 2010, the parties appeared before this Court to show cause why this issue should not be summarily decided. After considering the parties' arguments and reviewing the record, we conclude that cause has not been shown. For the reasons set forth in this opinion, we affirm the order of the Superior Court.

### Travel of the Case

█ On April 10, 2008, defendant was arrested and charged with one count of unlawful delivery of cocaine to an undercover police officer and one count of unlawful delivery within a school zone. The next day, April 11, 2008, the state filed a probation-violation report under Rule 32(f) of the Superior Court Rules of Criminal Procedure. The filing alleged that defendant violated the terms of his probation.[2] On April 11, 2008, defendant appeared before a magistrate, who ordered that he be held without bail. On April 25, 2008, defendant appeared before a second magistrate, at which time the date for a violation hearing was set.

On the morning of May 23, 2008, defendant appeared before the magistrate for a violation hearing. The state's witnesses were present and prepared to testify. However, defendant's appointed counsel informed the court that defendant no longer wished to have her represent him.

Speaking to the court on his own behalf, defendant said (1) that he was unaware a hearing had been scheduled for that day, (2) that he had witnesses to present but they were not ready, and (3) that his family was going to assist him to retain private counsel. The magistrate responded, "[y]ou don't go the day of the hearing with witnesses and decide you're going to fire your attorney." He informed defendant that the hearing would go forward as scheduled, and he assigned the matter to a hearing justice. The magistrate also directed counsel to accompany defendant to the hearing, remarking, "[s]he can either be stand-by counsel or Mr. Powell can represent himself."

Before the hearing justice that afternoon, counsel again raised the question of whether defendant wished to represent himself. The defendant again recited the bases for what amounted to a motion for a continuance and an opportunity to retain private counsel, this time adding that he did not believe that appointed counsel wished to continue to represent him. His attorney renewed her motion to withdraw as counsel and for the Court to appoint another attorney, saying, "[h]e's not willing to heed my advice at this point."

After he inquired of defendant about the details of his family's offer to retain private counsel, the hearing justice denied the motion to withdraw and refused to appoint new counsel. The hearing justice explained, "[t]he Court is convinced that it would be very difficult for Mr. Powell to get a private counsel. I don't see any

Office of the Public Defender petitioned for a writ of certiorari, which we granted.

**2.** These terms included the suspension of a sixty-six month sentence imposed on P2/02–3824A and a concurrent fifty-nine month sentence imposed on P2/04–1372A. Both of these suspended sentences resulted from judgments arising from the manufacture and delivery of a controlled substance. We note that "[i]f a defendant violates the terms of his or her probation, the court may remove the suspension and order the defendant to serve the entire portion of any sentence that previously was imposed but suspended, or any lesser sentence that the court determines is just." *State v. Parson,* 844 A.2d 178, 180 (R.I.2004).

significant discord between [counsel] and Mr. Powell. She certainly is a capable attorney who can represent him." Finally, the hearing justice said that he would allow defendant an opportunity to subpoena witnesses, but he also determined that in the interest of judicial economy—the state was ready to proceed and defendant had been given proper notice—the hearing would begin.

At the hearing, the state presented two Providence police officers as witnesses to support the allegation that on April 10, 2008, defendant sold them cocaine while they were serving in an undercover capacity. After the officers concluded their testimony, the state rested. Defense counsel then informed the hearing justice that the defense wished to investigate information that might be offered by defendant's witnesses. In response, the hearing justice granted a one-week continuance, to May 30, 2008.

On that day, the parties again appeared before the hearing justice. The defendant requested a further continuance so that he could provide defense counsel with information about his proposed witnesses. Even though counsel argued that she had not had the opportunity to see defendant during the previous week, and that the state would not be prejudiced by an additional continuance, the hearing justice denied the request for a continuance, and the hearing proceeded.

After defendant testified, the hearing justice continued the matter an additional week because of an afternoon scheduling conflict. However, before adjournment, the hearing justice returned to the issue of the defendant's witnesses, offering, "I will give the defendant every last opportunity. If you have got anyone you want subpoenaed on your behalf, give those names to [counsel]. * * * We will hear what they have to say."

On June 12, the parties appeared before the hearing justice for the last time. Having no witnesses to present, the defense rested. The hearing justice determined the defendant to be a violator and imposed sentence.

## Standard of Review

 It is well settled that the decision of the hearing justice to grant or deny a defendant's request for a continuance to secure alternate counsel is left to the sound discretion of the trial or hearing justice and will not be disturbed on appeal absent a clear abuse of discretion. *State v. Gilbert*, 984 A.2d 26, 29 (R.I.2009); *State v. Sampson*, 884 A.2d 399, 404 (R.I.2005). A motion requesting a court appointment of alternate or new counsel is treated as a motion for continuance because such a request, if granted, would require the court to continue the matter and delay its disposition. *Gilbert*, 984 A.2d at 30. Recently, in *Gilbert*, this Court had occasion to review the balancing framework for a hearing justice deciding to grant or deny a motion for continuance where arrangements for alternate counsel are sought. *Id.* In that case, we explained that although a defendant has a right to counsel at a probation violation hearing, such a hearing is summary in nature and the defendant is not entitled to the panoply of rights available at a criminal trial. *Id.* (citing *State v. Goncalves*, 941 A.2d 842, 846 (R.I.2008)). Therefore a motion to continue a probation-violation hearing so that alternative counsel might be retained is more narrowly reviewed.

 A hearing justice's decision to grant or deny a request for alternate counsel requires a balancing of "the presumption in favor of the defendant's right to trial counsel of choice and the public's interest in the prompt, effective, and efficient administration of justice." *Gilbert,*

984 A.2d at 30 (quoting *State v. Caprio,* 819 A.2d 1265, 1270 (R.I.2003)). In conducting the required fact-specific exploration, a hearing justice should consider the following factors:

> "[1] the promptness of the continuance motion and the length of time requested; [2] the age and intricacy of the case; [3] the inconvenience to the parties, witnesses, * * * counsel, and the court; [4] whether the request appears to be legitimate or merely contrived foot-dragging; [5] whether the defendant contributed to the circumstances giving rise to the request; [6] whether the defendant in fact has other competent and prepared trial counsel ready to pinch-hit; * * * and ▆ any other relevant factor made manifest by the record." *Id.* (quoting *State v. Burke,* 811 A.2d 1158, 1163 (R.I. 2002)).

In addition, there must be " 'exceptional circumstances' to justify a delay for an eleventh-hour discharge of counsel." *Id.*

### Analysis

▆ After examining the specific circumstances attendant to this case, we are satisfied that the hearing justice did not abuse his discretion when he denied defendant's motion for new counsel.

First, we conclude that the hearing justice exercised diligence in balancing the public's interests and the presumption favoring a defendant's right to counsel of choice. The defendant argues that his situation is "very much on point" with the facts of *Dias,* in which we held that a hearing justice had abused his discretion when he denied the defendant's motion for a continuance to secure private counsel. *State v. Dias,* 118 R.I. 499, 374 A.2d 1028 (1977). We are not persuaded that *Dias* is apposite. In that case, we observed that, "[t]he total time elapsed between the date of arrest and arraignment and the date of the hearing was merely 2 weeks." *Id.* at 504, 374 A.2d at 1030. Additionally, Dias informed the court that he was financially able to secure counsel, he named a particular attorney with whom he had met, and that counsel had informed him that he would be out of town on the day that the hearing was scheduled. *Id.* Under those circumstances we determined that the denial of the defendant's motion was an abuse of discretion. *Id.* at 504–05, 374 A.2d at 1030. Those circumstances simply are not present here. The defendant has not demonstrated that he can afford private counsel, nor did he even give the name of any potential advocate to the hearing justice. Rather, he merely has asserted that his family was making an effort to secure counsel. Further, assigned counsel did not say that she was unprepared to go forward with the hearing. Indeed, when the hearing began she cross-examined the state's witnesses.

Second, the state and its witnesses were present and ready to proceed. The hearing justice's efforts to balance defendant's rights and the public's interest in the prompt, effective, and efficient administration of justice was on keen display in the record of May 23 as the hearing justice patiently evaluated defendant's motion requesting the appointment of new counsel:

> "THE COURT: * * * I don't see you as getting a private attorney. And frankly, unless I hear something to the effect that you folks are at such loggerheads that you can't agree at all, or there's a possibility of you requiring or suggesting to [counsel] that she do something improper, my feeling is that she can handle the case. She's a qualified attorney, has a lot of experience. The Public Defender's Office, as we know, is a very busy office, but they make up for the fact that they have a lot of clients by the experience that they have. So, while

they might not be able to sit with a client as long as a private attorney might, they have so much experience that they can often counter that. It's not always perfect in that regard, but for the most part I think it balances out fairly well.

"THE DEFENDANT: Can I say something, your Honor?

"THE COURT: Go ahead.

"THE DEFENDANT: Can I get until Monday to think about this?

"THE COURT: Pardon me?

"THE DEFENDANT: Can you give me until Monday to think about that situation?

"THE COURT: The witnesses are here today. Are they police witnesses?

"[PROSECUTOR]: Yes.

"THE COURT: So, some taxpayer—is it in Providence?

"[PROSECUTOR]: Providence.

"THE COURT: So, the Providence taxpayers are paying for these people to be downstairs today."

Those balancing, fact-specific calibrations of the hearing justice are appropriate considerations for a hearing justice evaluating a motion for alternative counsel. As we previously have established, review of the hearing justice's assessment of the care and competence of a court-appointed attorney is important because the effective assistance of counsel necessarily underlies any consideration of an alternative counsel continuance motion. *See Goncalves*, 941 A.2d at 846 (observing that "the hearing justice noted on the record that [the] de-fendant primarily was unhappy with 'the proposed disposition' of the case, even though his lawyer had plea bargained effectively with the state"); *Sampson*, 884 A.2d at 404 (observing that "[t]he hearing justice disagreed with [the defendant's] assessment of his court-appointed attorney, noting that '[the court-appointed attorney] does an outstanding job for his clients' and that he recently 'gave the best final argument I have ever heard a defense counsel give' ").

Third, and finally, it is significant that the defendant first expressed an interest in a continuance to secure private counsel, or, in the alternative, for the court to appoint alternative counsel on the morning of the hearing. In our view, this smacks of an attempted " 'eleventh-hour discharge of counsel' "; such a discharge at a violation hearing is justified only by " 'exceptional circumstances.' " *Gilbert*, 984 A.2d at 30. We note that despite the defendant's protestations of being unaware of an impending violation hearing, the defendant was, in fact, before a magistrate on April 25, 2008; at that time a violation hearing date was designated. The violation hearing before the hearing justice occurred four full weeks after that date, and a full six weeks after the defendant was arrested.[3] This Court is completely satisfied that no exceptional circumstances existed to justify granting such a request for alternative counsel when the defendant (1) had knowledge of the originally scheduled hearing date and (2) had the benefit of six weeks from the time of his arrest until the time of the violation hearing to take what-

---

**3.** Additionally, defendant's alternative counsel motions did not constitute continuing objections upon being denied. In *State v. Sampson*, 884 A.2d 399, 404 n. 4 (R.I.2005), we concluded that there was no continuing objection where the trial justice told the defendant he could either represent himself or be represented by the attorney provided where the defendant replied "all set." Here, the hearing justice informed defendant that he could either go forward with the public defender provided or represent himself *pro se*. To this, defendant finally responded, "I better represent myself, but I'm not smart enough to represent myself because I'm not a lawyer."

ever steps were required to secure alternative counsel. There is no indication whatsoever of an abuse of discretion by the hearing justice.

### Conclusion

The order of the Superior Court is affirmed. The papers in this case are remanded to the Superior Court.

Justice INDEGLIA did not participate.