STATE

v.

Giulio LANCELLOTTA.

No. 2010–425–M.P.

Supreme Court of Rhode Island.

Jan. 5, 2012.

Lauren S. Zurier, Department of Attorney General, for State.

Catherine Gibran, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

This case is before the Court on a writ of certiorari. For the reasons set forth herein, we affirm the judgment of the Superior Court. The defendant, Giulio Lancellotta, seeks review of a Superior Court adjudication of probation violation that resulted in his being ordered to serve seven years of a previously imposed twelve-year suspended sentence. Before this Court, the defendant argues that the magistrate erred when he (1) denied the defendant's request for a continuance to secure new counsel; (2) acted arbitrarily and capriciously in finding a violation; and (3) imposed a sentence greater than that which had been offered as part of a plea bargain before the hearing.

On October 26, 2011, the parties appeared before this Court to show cause why these issues should not summarily be decided. After considering the parties' written and oral submissions, and after reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.

## Procedural History

On August 24, 2000, Lancellotta pled nolo contendere to one count of second-degree robbery. The trial justice sentenced Lancellotta to twelve years in prison, which sentence was suspended, and twelve years probation. Nearly eight years later, while he still was on probation, the state alleged that Lancellotta violated the terms and conditions of his probation for the robbery and three other convictions,[1] and it presented Lancellotta as a violator under Rule 32(f) of the Superior Court Rules of Criminal Procedure.[2] At the time he was presented as a violator, Lancellotta filed an application indicating he was unable to afford private counsel and was in need of a public defender.

The defendant's violation hearing originally was scheduled for August 4, 2008, but was continued twice, first to August 20, 2008, and then to August 25, 2008. When the prosecutor announced that the state was ready to proceed with the violation hearing, defendant informed the court that he wanted to dismiss the assistant public defender who had entered an appearance on his behalf and wished to retain private counsel. The defendant told the court that he had expressed to the public defender that he wanted a different lawyer and that he had "talked" with private counsel. A Superior Court magistrate told defendant that he would not delay the hearing and that he had the right to represent himself or to be represented by the public defender, but, in either event, the court intended to move

---

1. On February 1, 2006, defendant entered a plea of nolo contendere, and also was convicted of forgery and counterfeiting, driving a vehicle without the consent of the owner, and possession of a stolen motor vehicle. He was sentenced to five years imprisonment, with two years to serve and three years suspended. At that time, defendant was continued on the same suspended sentence and probation that had been imposed in 2000 on the robbery conviction.

2. Rule 32(f) of the Superior Court Rules of Criminal Procedure provides that:

"The court shall not revoke probation or revoke a suspension of sentence or impose a sentence previously deferred except after a hearing at which the defendant shall be afforded the opportunity to be present and apprised of the grounds on which such action is proposed. The defendant may be admitted to bail pending such hearing. Prior to the hearing the State shall furnish the defendant and the court with a written statement specifying the grounds upon which action is sought under this subdivision."

forward with the violation hearing on that day. The public defender represented defendant throughout the hearing.

After the probation-violation hearing in the Superior Court, the magistrate found that Lancellotta had violated the terms and conditions of his probation, and he sentenced him to serve seven years of his twelve-year suspended sentence. Lancellotta timely appealed.

## Factual Background

On July 20, 2008, Middletown resident Virginia Avanzino received a number of troubling phone calls from her daughter Elizabeth, who lived in North Providence. During those calls, a "hysterical[ly] crying" Elizabeth reported to her mother that her boyfriend, defendant Giulio Lancellotta, was beating her up, that she had a black eye, had been kicked in the stomach, and was vomiting blood. Elizabeth also told her mother that defendant had injured her leg, causing it to bleed. Ms. Avanzino urged her daughter to call the police, but Elizabeth said that defendant would kill her if she did so.

Because she was concerned about her daughter's safety, Ms. Avanzino contacted the Middletown Police Department herself. The police traced the phone number Elizabeth had called from to a house located at 24 Olney Avenue in North Providence. At approximately 8 p.m., North Providence patrolman Jonathan Picard was dispatched to that address. When he arrived, the officer was informed by the landlord that the first-floor tenant's name was "Giulio," the name of the suspect. Officer Picard then interviewed Elizabeth Avanzino. He observed that she was disheveled, appeared to be very upset, and that her left eye was black and blue. Elizabeth told the officer that Giulio was her boyfriend and that she had been in a fight with him at approximately 3:30 that morning, during the course of which he had hit her in the left eye. Officer Picard then asked Elizabeth about a number of bruises and a slice mark that he noticed on her right leg. Elizabeth said that defendant had also caused those injuries, and she told the officer that defendant "beat[ ] on her constantly." Picard documented Elizabeth's injuries with digital photographs.

During the probation-violation hearing, Officer Picard testified that Elizabeth had told him that she was reluctant to provide him with information because she feared defendant would be arrested. Elizabeth also testified; she said that defendant had struck her in the face. Elizabeth acknowledged that she had telephoned her mother, but she denied telling her mother that defendant had beaten her. Elizabeth also testified that it was possible that her black eye was the result of an altercation she had had with another woman a few weeks before the incident with her boyfriend, and she insisted that her memory had been impaired by her use of drugs and alcohol. Finally, Elizabeth testified that she had no idea how she received the other injuries that were depicted in the photographs taken by Officer Picard.

At the conclusion of the hearing, the magistrate found that it was "uncontroverted, uncontested" that defendant had "smacked or hit" Elizabeth Avanzino in the eye during a fight. Therefore, the court found "defendant's behavior did not comport with his agreement to keep the peace and be of good behavior."

Before this Court, defendant argues that the magistrate erred when he denied defendant's request to secure new counsel, when he found that defendant had violated the terms and conditions of his probation, and because he imposed a sentence greater than what had been offered in a proposed plea agreement before the hearing.

## Standard of Review

■ "The sole issue for consideration at a probation-violation hearing is 'whether or not the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior.'" *State v. Gilbert*, 984 A.2d 26, 29 (R.I.2009) (quoting *State v. Tetreault*, 973 A.2d 489, 491 (R.I.2009)). The burden of proof at a probation-violation hearing is "'much lower than that which exists in a criminal trial [;]' the state must only show that 'reasonably satisfactory evidence supports a finding that the defendant has violated his or her probation.'" *Id.* (quoting *Tetreault*, 973 A.2d at 491–92).

■ A decision "to grant or deny a defendant's request for a continuance to secure alternate counsel is left to the sound discretion of the trial or hearing justice and will not be disturbed on appeal absent a clear abuse of discretion." *State v. Powell*, 6 A.3d 1083, 1086 (R.I.2010) (citing *Gilbert*, 984 A.2d at 29).

■ Although defendants do have a right to counsel at probation-violation hearings, such hearings are "summary in nature and the defendant[s] [are] not entitled to the panoply of rights available at a criminal trial." *Powell*, 6 A.3d at 1086 (citing *Gilbert*, 984 A.2d at 30). A motion requesting court appointment of new counsel is treated as a motion for a continuance because "such a request, if granted, would require the court to continue the matter and delay its disposition." *Id.* "Therefore a motion to continue a probation-violation hearing so that alternative counsel might be retained is more narrowly reviewed." *Id.*

■■ "A hearing justice's decision to grant or deny a request for alternate counsel requires a balancing of 'the presumption in favor of the defendant's right to the trial counsel of choice and the public's interest in the prompt, effective, and efficient administration of justice.'" *Powell*, 6 A.3d at 1086 (quoting *Gilbert*, 984 A.2d at 30). A hearing justice should consider the following factors when conducting such a fact-specific exploration:

"[1] the promptness of the continuance motion and the length of time requested; [2] the age and intricacy of the case; [3] the inconvenience to the parties, witnesses, * * * counsel, and the court; [4] whether the request appears to be legitimate or merely contrived foot-dragging; [5] whether the defendant contributed to the circumstances giving rise to the request; [6] whether the defendant in fact has other competent and prepared trial counsel ready to pinch-hit; * * * and [7] any other relevant factor made manifest by the record." *Id.* at 1087 (quoting *Gilbert*, 984 A.2d at 30).

■ Additionally, "exceptional circumstances" must exist "to justify a delay for an eleventh-hour discharge of counsel." *Powell*, 6 A.3d at 1087 (quoting *Gilbert*, 984 A.2d at 30).

## Analysis

### 1. The Request for a Change of Counsel

■ After a thorough review of the record, we are convinced that the magistrate did not abuse his discretion when he denied defendant's motion for new counsel. We are satisfied that the magistrate appropriately balanced the public's interest and the presumption favoring a defendant's right to the counsel of his choice. The defendant argues that the magistrate "committed the same error that caused this Court to reverse the adjudication of probation violation in *Dias*," in which we held that a trial justice abused his discretion when he denied the defendant's motion for a continuance to secure private

counsel. *See State v. Dias,* 118 R.I. 499, 504–05, 374 A.2d 1028, 1030 (1977).

In our opinion, *Dias* is inapposite. In that case, the total time that had passed between the date of the defendant's arrest and the date of the hearing was only two weeks. *Dias,* 118 R.I. at 504, 374 A.2d at 1030. Also, the defendant had informed the court that he was financially able to secure counsel, he named a particular attorney with whom he had met, and that attorney had informed the clerk that he would be out of state on the day of the hearing. *Id.* Moreover, the public defender in *Dias* moved for a continuance before the hearing because he was not ready to proceed because he had relied on the defendant's assertion that private counsel had been retained. *Id.* at 504, 374 A.2d at 1029.

The circumstances that existed in *Dias* are simply not present here. In this case, a Rule 32(f) report was filed in July, 2008, and more than one month had passed before the violation hearing was held. Indeed, two prior continuances had been granted before defendant's probation-violation hearing date on August 25, 2008. The defendant had signed an affidavit stating that he was indigent and needed the representation of the public defender, and he did not demonstrate that he had the means to secure private counsel. Although defendant referred by name to a specific attorney who he wished to represent him, no private attorney entered an appearance on behalf of defendant nor did any private counsel contact the court. Significantly, the public defender who had been representing defendant indicated to the court that she was ready to proceed.

The magistrate evaluated defendant's motion requesting new counsel and effectively engaged in an appropriate balancing test. In his fact-specific exploration, he considered that defendant had waited for over a month to request a new attorney, that no other trial counsel was ready to enter an appearance, and that the only issue defendant had with his public defender revolved around his displeasure with the plea deal that she had communicated to him. The magistrate explained to defendant that the plea offer came from the court, not from the public defender, who merely was conveying what the court had agreed to as a disposition.

Finally, the magistrate noted that defendant had waited until witnesses were present and "lined up ready to go" before asking the court for new counsel. In our opinion, there were no "exceptional circumstances" that called for an "eleventh-hour discharge of counsel" in this case. *Powell,* 6 A.3d at 1087 (quoting *Gilbert,* 984 A.2d at 30). We see no indication whatsoever of an abuse of discretion and we will not disturb the magistrate's decision.

## 2. The Finding of a Violation

■ Next, defendant argues that the magistrate acted arbitrarily and capriciously when he found him to be in violation of the terms and conditions of his probation because the victim was not a credible witness and because the state failed to present reasonably satisfactory evidence that defendant was a violator. With respect to the testimony of the complaining witness, Elizabeth, "it is not this Court's function to weigh the credibility of witnesses; that task is for the hearing justice." *State v. McLaughlin,* 935 A.2d 938, 942 (R.I.2007) (citing *State v. Sampson,* 884 A.2d 399, 403 (R.I.2005)). Although there were inconsistencies in the victim's story, the magistrate addressed them and said that it appeared that she was trying to maintain a relationship with defendant. Elizabeth admitted during her testimony that she still cared for defen-

dant and that she did not want anything bad to happen to him. The evidence also revealed that Elizabeth gave a contemporaneous handwritten account of the incident to the police. In that statement, she did not indicate that the bruises on her face had been caused by anyone other than defendant. The magistrate found that Elizabeth had been struck in the face by defendant and that a photo entered into evidence "show[ed] what I would describe as a pretty good bruise on the left side of the victim's face at the eye area."

The defendant argues that slapping Elizabeth once did not constitute a severe enough offense to qualify as a probation violation. But, in our view, the state presented reasonably satisfactory evidence to prove that defendant had violated his probation. The defendant overlooks the principle that "the state has to prove only within a reasonable degree of probability that defendant breached the peace." *State v. Vieira*, 883 A.2d 1146, 1149 (R.I.2005). The magistrate explicitly found that it was undisputed that "at the very minimum," defendant struck the victim in the face. There was no claim of self-defense, and no evidence offered by anyone that this incident did not occur. We hold that the magistrate acted neither arbitrarily nor capriciously when he found that the evidence presented at the probation-violation hearing was sufficient to demonstrate that defendant had violated the terms and conditions of his probation. We agree with the magistrate that the facts presented by the state were sufficient to demonstrate that defendant failed to keep the peace and remain on good behavior.

### 3. Appropriateness of Punishment

Finally, defendant argues that he was punished for asserting his right to a violation hearing and, therefore, the sentence should be vacated. He maintains that his due-process rights were violated because he was offered a plea bargain prior to the hearing whereby, if he admitted to the violation and pleaded guilty to the new charge arising from the assault on Elizabeth, a sentence of ten years, with three years to serve, would be imposed. However, defendant was not sentenced for the assault "that comprise[d] the violation, but rather the sentence [was] 'guided principally by consideration of the nature of the *first* offense.'" *Vieira*, 883 A.2d at 1150 (quoting *State v. Pires*, 525 A.2d 1313, 1314 (R.I.1987)). The defendant was on probation for four prior offenses, all of which were felonies. The magistrate said that he originally intended to vacate all twelve years of defendant's remaining sentence but only imposed seven years because of the uncertainty of the victim's recollection and the conflicting testimony about Elizabeth's injuries.

The magistrate has wide discretion when determining the proper sentence to exact upon a probation violator, especially because "the unexecuted portion of a probationer's suspended sentence hangs over his or her head by the single horsehair of good behavior, until such time as the term of probation expires." *Vieira*, 883 A.2d at 1149 (quoting *State v. Parson*, 844 A.2d 178, 180 (R.I.2004)). We hold that the magistrate acted well within the discretion granted to him by G.L.1956 § 12–19–9.

### Conclusion

For reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be remanded to the Superior Court.